IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Lynch, | ) | C/A No.: 1:17-2979-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Nancy A. Berryhill, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civ. Rule 73.01(B) (D.S.C.), and the order of the Honorable Patrick Michael Duffy, United States District Judge, dated April 10, 2018, referring this matter for disposition. [ECF No. 16]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals. [ECF No. 15].

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons

that follow, the court reverses and remands the Commissioner's decision for further proceedings as set forth herein.

I.     Relevant Background

A.     Procedural History

On June 12, 2015, Plaintiff filed application for DIB in which he alleged his disability began on August 19, 2014. Tr. at 172–79. His application was denied initially and upon reconsideration. Tr. at 95–98 and 101–04. On March 20, 2017, Plaintiff had a video hearing before Administrative Law Judge ("ALJ") John T. Molleur. Tr. at 39–58 (Hr'g Tr.). The ALJ issued an unfavorable decision on April 20, 2017, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 10–26. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–5. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on November 2, 2017. [ECF No. 1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 58 years old at the time of the hearing. Tr. at 44. He obtained his high school GED. *Id.* His past relevant work ("PRW") was as an

insurance agent. Tr. at 44–45. He alleges he has been unable to work since August 2014. Tr. at 45.

2. Medical History

On June 25, 2015, Plaintiff's treating psychiatrist, Dr. Marshall A Staton ("Dr. Staton"), completed a medical assessment form. Tr. at 263. Dr. Staton stated Plaintiff suffered from depressive disorder and had been prescribed Wellbutrin, Effexor, and Trazodone. *Id.* He noted Plaintiff was oriented to time, person, place, and situation and had intact thought processes, appropriate thought content, depressed mood, adequate attention and concentration, and adequate memory. *Id.* Dr. Staton also indicated Plaintiff had good ability to complete basic activities of daily living ("ADLs"); adequate ability to relate to others; good ability to complete simple, routine tasks; and adequate ability to complete complex tasks. *Id.*

On August 14, 2015, Dr. Dalal Akoury ("Dr. Akory")performed a comprehensive medical examination upon Plaintiff's complaints of vision loss in his left eye, depression, and anxiety. Tr. at 265. Dr. Akoury noted Plaintiff's vision loss in the lower left eye was permanent and caused inability to focus on anything outside Plaintiff's direct line of sight. *Id.* Plaintiff reported losing all vision in his left eye in 2012 after experiencing a severe hypertensive episode. *Id.* He also reported experiencing some moderately blurry vision in both eyes with infrequent artifacts appearing. *Id.*

3

Dr. Akoury noted Plaintiff's medical history included hypertension, hyperlipidemia, depression and anxiety, and vision loss in the left eye. *Id.* Dr. Akoury indicated Plaintiff was taking Lisinopril, Trazodone, Wellbutrin, and Atorvastatin. *Id.* Plaintiff denied any past use of alcohol or illicit substance use or abuse, but admitted to smoking an occasional cigar. *Id.* Plaintiff stated he last worked in August 2014 as an insurance agent and sales representative, but was unable to continue this type of work. *Id.* Plaintiff also reported he was divorced, lived alone, and did not receive assistance with his ADLs. *Id.* Dr. Akoury indicated Plaintiff was oriented to person, place, and time and found his neurological and mental status within normal limits. Tr. at 266–67. Dr. Akoury assessed left eye vision loss and depression and anxiety based on Plaintiff's reported history. Tr. at 267.

On January 12, 2016, Plaintiff presented to Oceano Counseling, LLC, for an initial psychological assessment by Monica Sojka ("Sojka"), a licensed social worker. Tr. at 281. Plaintiff reported a 20-year history of treatment for anxiety and depression, including ten years of consultation with a psychiatrist, and indicated he had been depressed for about a year. *Id.* Plaintiff stated he graduated high school and attended some college and previously worked as an insurance agent, but had been out of work for a year. Tr. at 283. Plaintiff reported experiencing a transient ischemic attack ("TIA") a few years prior and having sleep apnea, high cholesterol, and hypertension.

4

*Id.* Sojka noted Plaintiff was alert and well-oriented; his mood was severely depressed, with blunted affect; and he had significant irritability. Tr. at 287. Sojka found Plaintiff met the criteria for recurrent major depression without psychosis. *Id.* She also indicated he might meet the criteria for generalized anxiety disorder, but she suspected his depression was the source of his anxiety. *Id.*

Plaintiff had weekly counseling sessions with Sojka through February 2017. *See* Tr. at 289, 294–96, 297–378. In notes from each of those sessions, Sojka indicated Plaintiff was oriented to time, place, person, and situation; his perception, thought content, and judgment were normal; he had excessive appetite and sleep; his insight was fair; his thought process was coherent; he was cooperative; his appearance was appropriate to his age; he was severely depressed; he had trouble concentrating, very low energy, and low motivation; he was socially withdrawn; and he exhibited psychomotor slowing and blunted/tearful affect. Tr. at 297–378. Her diagnostic impression remained Major Depressive Disorder, Recurrent episode, Severe, throughout Plaintiff's course of treatment. *Id.*

On February 25, 2016, Dr. Douglas R. Ritz ("Dr. Ritz") performed a consultative mental status examination regarding allegations of anxiety, depression, permanent partial vision loss in the left eye, hypertension, and headaches. Tr. at 290–93. Plaintiff indicated he had received treatment for

depression for 20 years, but suspected he was depressed dating back to high school. Tr. at 290. He said he thought the depression had worsened over the prior eight years since his mother died suddenly and he and his wife separated. *Id.* He reported low energy, trouble sleeping through the night, sleeping too much during the day, and crying easily. *Id.* Plaintiff reported past medical conditions of high cholesterol, sleep apnea, vision loss from a TIA, and hypertension. *Id.* Dr. Ritz noted Plaintiff's medications included Lisinopril, atorvastatin, bupropion, venlafaxine, and trazodone. Tr. at 290–91. Plaintiff stated he used to drink fairly heavily, but started going to alcoholics anonymous ("AA") and has been sober for many years. Tr. at 291.

Plaintiff reported he began working as an insurance agent in 1989, was last employed at Allstate for a year and a half, but resigned in 2014. *Id.* Plaintiff stated he was prevented from working because he did not get along with people and tended to be irritable around others. *Id.*

Plaintiff had a driver's license and drove himself to the evaluation. *Id.* Plaintiff reported he lived alone; went to bed between 1:00 and 2:00 a.m. and set an alarm for 8:00 a.m., but rarely got up on time; took medication and made coffee; did household chores when he felt like it; spent time watching television and on the computer; consistently took care of his personal grooming; regularly attended AA meetings and church; occasionally went to the golf driving range; and shopped for groceries. *Id.*

Dr. Ritz noted Plaintiff maintained eye contact throughout the evaluation; his speech was low in volume and monotone; his mood was sad, but not tearful; and his affect was flat. *Id.* Plaintiff was alert, responsive, and in no distress. *Id.* He was coherent, logical, but had no goals for himself. *Id.* His insight and judgment were good. *Id.* During a Mini-Mental Status, second edition, Plaintiff did not know the correct date or the full address of the examiner's office; was able to recall one of three words after a few minutes; could do serial 7s without error, but could not accurately repeat a nine-word sentence; could point to figures in a directed order; and could draw intersecting pentagons. Tr. at 291–92. Plaintiff's score was 25 out of 30, which was in the unimpaired range. Tr. at 292. Dr. Ritz estimated Plaintiff's cognitive skills to be within the average limits. *Id.*

Dr. Ritz noted Plaintiff consistently took care of his personal grooming, did household chores when he felt like it, maintained some social contacts, and was able to avoid physical danger and handle funds. *Id.* Dr. Ritz concluded Plaintiff had a depressive disorder that would not necessarily prevent him from performing in the work setting. *Id.* He opined that, while Plaintiff may have some difficulty in his prior job, he might be able to function in a more unskilled type work setting. *Id.* Dr. Ritz listed Plaintiff's diagnoses as recurrent mild major depressive disorder and alcohol use disorder, in sustained remission. *Id.*

On March 9, 2016, Sojka wrote a letter disagreeing with Dr. Ritz's diagnosis of mild recurrent major depression. Tr. at 294–96. Sojka opined Dr. Ritz's mental status exam, in which he noted Plaintiff's speech was low and monotone and his affect was flat, was consistent with severe depression, not mild. Tr. at 294. Sojka noted Plaintiff's 20-year history of severe depression that had been only minimally responsive to medication. *Id.* She listed Plaintiff's symptoms of severe depression as trouble concentrating, very low energy, low motivation, social withdrawal, psychomotor slowing, and blunted affect. Tr. at 294–95. Sojka indicated in her initial assessment Plaintiff had scored a five on the SADPERSON screening, a score that suggests a significant risk and a need for immediate suicide screening. Tr. at 295. She stated in her 30 years of experience as a mental health clinician, she had only seen five or six patients as depressed as Plaintiff and the Social Security Administration found those patients disabled. *Id.* Sojka emphasized her diagnosis was made solely based on clinical presentation and prior to knowing Plaintiff had applied for disability. *Id.* She concluded by offering her professional opinion that Plaintiff was fully and completely disabled by his severe recurrent major depression. *Id.*

On April 5, 2016, in a counseling session with Sojka, Plaintiff reported worsening anxiety and muscle tension. Tr. at 304.

On April 21, 2016, Plaintiff returned to Dr. Staton for psychotherapy and medication management. Tr. at 379. Plaintiff reported seeing a psychotherapist for four months and wanting to reestablish treatment with Dr. Staton to assist with his disability application. *Id.* Plaintiff expressed distress over the state of his life and indicated a lack of support system. *Id.* Dr. Staton noted Plaintiff was taking Wellbutrin, Effexor, and Trazodone and prescribed Abilify to augment Plaintiff's other medications. *Id.* Plaintiff continued to see Dr. Staton every several months until March 2017. Tr. at 379–84. In records from each of these sessions, Dr. Staton notes Plaintiff as oriented, his affect is depressed, associations are intact, speech is within normal limits, he does not have psychotic symptoms, and he denies suicidal or homicidal ideations. *Id.* Dr. Staton continued his diagnosis of recurrent major depressive disorder throughout Plaintiff's treatment. *Id.*

On May 10, 2016, Plaintiff told Sojka that Dr. Staton had prescribed Abilify. Tr. at 310. He said the medication made him edgy, so he cut the dosage in half, and indicated he did not think it was helping his depression at all. Tr. at 310–11.

On May 19, 2016, Plaintiff told Dr. Staton the Abilify had not been helpful and Dr. Staton discontinued it and renewed Plaintiff's other medications. Tr. at 380.

On June 16, 2016, Plaintiff reported he did not feel any better or worse after stopping Abilify and Dr. Staton supplied Plaintiff with Deplin samples to augment his antidepressants. Tr. at 381.

On June 17, 2016, Plaintiff told Sojka that Dr. Staton had prescribed another medication to boost the effect of his current medications. Tr. at 319.

On July 19, 2016, Dr. Staton counseled Plaintiff on structuring his free time. Tr. at 382. Plaintiff stated he attended AA meetings three or four times per week, despite being sober for 30 years, because it helped his mood and feelings of isolation. *Id.* Plaintiff indicated the Deplin had not helped and Dr. Staton discontinued it and stated he would consider other antidepressant options. *Id.*

On August 30, 2016, Plaintiff reported worsening depression due to financial struggles and told Sojka he was finding it difficult to get out of bed. Tr. at 328. He also stated he had not responded to his new medication. Tr. at 331. Sojka noted Plaintiff had severe treatment resistant depression. *Id.*

On December 8, 2016, Dr. Staton noted Plaintiff was also taking Lisinopril and a cholesterol medication and stated Plaintiff's current psychiatric medications were helpful and well-tolerated. Tr. at 383. Plaintiff reported he was no better than his prior visit. *Id.*

On January 24, 2017, Plaintiff told Sojka he continued to struggle with multiple stressors and a lack of resources. Tr. at 366. He felt discouraged about his future and found it very tiring to address his daily needs. *Id.*

On January 31, 2017, in a session with Sojka, Plaintiff reported struggling with motivation and getting going, especially in the morning. Tr. at 368.

On February 7, 2017, Sojka noted Plaintiff became frustrated with obstacles and his limitations and indicated he was becoming more depressed due to increasing financial problems and a lack of resources and support. Tr. at 370.

On February 25, 2017, Sojka completed a mental RFC. Tr. at 377–78. Sojka indicated Plaintiff was diagnosed with major depressive disorder, recurrent, severe and that his prognosis was limited. Tr. at 377. She noted Plaintiff's mood and affect were depressed; he was oriented to time, person, place, and situation; his thought process was intact; his thought content was appropriate; and he had poor attention and concentration and adequate memory. *Id.* She opined Plaintiff was not capable of performing sustained work activity eight hours a day, five days a week with normal breaks. *Id.*

Sojka further indicated Plaintiff was moderately limited in his abilities to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple

instructions; ask simple questions or request assistance; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. at 377–78. In addition, she indicated Plaintiff was markedly limited in his abilities to understand and remember very long and detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a constant pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; set realistic goals or make plans independently of others. *Id.* She noted none of Plaintiff's limitations were caused by ongoing drug abuse or alcoholism. Tr. at 378.

Along with the RFC, Sojka provided a statement on Plaintiff's behalf. Tr. at 374–76. In addition to re-stating the points of her March 2016 letter,

Sojka noted Plaintiff had consistently attended his appointments and fully participated in his treatment. Tr. at 374. She also stated Plaintiff had endured huge financial hardships, which worsened his symptoms considerably, and that, because of this, he was fully and completely disabled. *Id.*

On March 9, 2017, Dr. Staton noted, generally, Plaintiff was about the same in regard to his depression. Tr. at 384. Plaintiff stated his life was an effort and he did not feel he would ever get better. *Id.* He reported his medications were somewhat helpful and well-tolerated. *Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing on March 20, 2017, Plaintiff testified he was born on February 21, 1959, completed his GED, and lived alone. Tr. at 44. He stated he last worked as an insurance agent in August 2014. Tr. at 44–45. He stated he received residual commissions thereafter, but did not actively work. Tr. at 45.

Plaintiff testified that he applied for disability in 2012, but then had an opportunity to interview and obtained a job with Allstate, because he was not able to meet the changed production requirements in 2014, he stopped working. Tr. at 48–49. He stated that he has trouble concentrating, had sleep

issues, did not function well with coworkers and others and was depressed. Tr. at 50. Plaintiff testified that in 2014, he and his wife divorced, and she moved to Florida with his daughter, and they have no contact with each other. Tr. at 51. He testified that he lost his mother, his brother-in-law had a stroke, and his older brother was diagnosed with cancer and died. *Id.*

Plaintiff testified he tried, but was unable to obtain other employment after Allstate, and he was forced to take his pension early and obtain food stamps to survive. Tr. at 51–52. He stated he had a TIA around 2012 that subsequently led to permanent vision loss in his left eye. Tr. at 52. He stated he is being treated at an urgent care center for his blood pressure and cholesterol. *Id.* Plaintiff testified he is able to drive "okay" in the daytime, but does not travel far, usually to church, for groceries and doctor's appointments and for AA meetings, as a recovering alcoholic who has been sober for 30 years. Tr. at 53–54.

Plaintiff testified he had a sleep study two years earlier and had been using a CPAP machine since. Tr. at 54. He said the CPAP machine has helped, but he slept between four and eight hours a night and still found it difficult to get up in the morning. *Id.*

b.  Vocational Expert Testimony

Vocational Expert ("VE") Coretta Kay Haroldson reviewed the record and testified at the hearing. Tr. at 55–57. The VE categorized Plaintiff's PRW

as an insurance manager as sedentary with an SVP of 8, *DOT* number 186.167-034, and as an insurance agent as light with an SVP of 6, *DOT* number 250.257-010. Tr. at 55. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform no more than medium work, with no more than brief and incidental contact with members of the general public, restricted to requiring no more than occasional decision making. *Id.* The VE testified that the hypothetical individual could not perform Plaintiff's PRW. *Id.* The ALJ asked whether there were any other jobs in the region or national economy that the hypothetical person could perform. *Id.* The VE identified the representative unskilled positions of lacer tier as medium with an SVP of two, *DOT* number 724.687-010 with approximately 160,000 positions available in the national economy; battery stacker as medium with an SVP of two, *DOT* number 727.687-030 with approximately 233,000 positions available in the national economy; hand packager as medium with an SVP of two, *DOT* number 920.687-018 with approximately 770,000 positions available in the national economy. Tr. at 56. The ALJ then asked whether adding the limitation of light work to the hypothetical would allow skills to transfer from Plaintiff's PRW. *Id.* The VE testified that there were no skills that would transfer. *Id.*

The ALJ then offered a second hypothetical, maintaining all factors in the original hypothetical and adding that the individual would require

unscheduled breaks or otherwise be off task due to complications arising from his diagnosed condition such that the total time off task would be 60–90 minutes a day over and above scheduled breaks. Tr. at 56–57. The VE testified the additional limitation would preclude employment. Tr. at 57.

### 2. The ALJ's Findings

In his decision dated April 20, 2017, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.
2. The claimant has not engaged in substantial gainful activity since August 19, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
3. The claimant has the following severe impairments: alcohol use disorder in sustained remission; and major depressive disorder (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit 6 hours each in an 8-hour day; however, the claimant can only tolerate brief/incidental contact with the general public and no more than occasional decision making or changes in the work setting.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on February 21, 1959 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date. (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

16

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 19, 2014, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 15–22.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) the ALJ did not sufficiently account for Plaintiff's moderate difficulties in maintaining concentration, persistence, and pace under *Mascio v. Colvin* in limiting Plaintiff to medium work with only brief/incidental contact with the general public and no more than occasional decision making or changes in the work setting;

2) the ALJ erred in failing to attribute significant weight to the opinion of Plaintiff's treating therapist; and

3) the ALJ erred in failing to credit Plaintiff's testimony regarding his limitations with concentration, persistence, and pace.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly

apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE

---

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold

the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B. Analysis

1. RFC Assessment

Plaintiff argues the ALJ did not sufficiently account for his moderate limitations in concentration, persistence, or pace in the RFC assessment. [ECF No. 14 at 7]. He alleges the restrictions in the RFC and the hypothetical to the VE did not address his ability to stay on task for acceptable periods until a task is completed or his ability to repeat sequences of action to achieve a goal for an eight hour work day. *Id.* at 9.

The Commissioner argues the RFC assessment accounted for Plaintiff's credibly-established mental deficits. [ECF No. 17 at 10]. She alleges the ALJ

only found Plaintiff had moderate difficulties maintaining concentration, and states the evidence of record supports Plaintiff's moderate difficulty maintaining concentration and not persistence or pace. *Id.* at 10–11. The Commissioner contends the ALJ's decision to limit Plaintiff to unskilled jobs that required no more than brief contact with the general public and no more than occasional decision making or changes in the work setting accounted for Plaintiff's restricted concentration. *Id.* at 11.

A claimant's RFC represents the most he can still do despite his limitations. 20 C.F.R. § 404.1545(a). It must be based on all the relevant evidence in the case record and should account for all of the claimant's medically-determinable impairments. *Id.* The RFC assessment must include a narrative discussion describing how all the relevant evidence in the case record supports each conclusion and must cite "specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *7 (1996). The ALJ must determine the claimant's ability to perform work-related physical and mental abilities on a regular and continuing basis. *Id.* at *2. He must explain how any material inconsistencies or ambiguities in the record were resolved. *Id.* at *7. "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis

frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

In assessing that Plaintiff had moderate limitations in concentration, persistence, or pace, the ALJ provided the following explanation:

> The claimant reported that he was able to drive a motor vehicle, remember his medications, prepare simple meals, perform household chores, do laundry, watch television, and use his computer. (Exhibits 7E, 7F, and 9F),

Tr. at 16.

Pursuant to Listing 12.00(E)(3), evaluation of a claimant's ability to maintain concentration, persistence, or pace requires examination of his "abilities to focus attention on work activities and stay on task at a sustained rate." "[T]he nature of this area of mental functioning" includes: "initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3).

In *Mascio*, 780 F.3d at 638, the ALJ failed to include any mental restrictions in the hypothetical question he posed to the VE, despite the fact

that he credited the plaintiff's diagnosis of an adjustment disorder and found that she had moderate difficulties in maintaining concentration, persistence, or pace. The ALJ relied on the VE's unsolicited identification of unskilled work to match his RFC finding. *Mascio*, 780 F.3d at 638. The court found that the ALJ erred in assessing the plaintiff's RFC. *Id.* It stated "we agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* The court explained that it was possible for the ALJ to find that the moderate concentration, persistence, or pace limitation did not affect the plaintiff's ability to work, but that remand was required "because the ALJ here gave no explanation." *Id.*

In his RFC determination the ALJ provided that Plaintiff "can only tolerate brief/incidental contact with the general public and no more than occasional decision making or changes in the work setting." Tr. at 17. The ALJ's inclusion of provisions for "brief/incidental contact with the general public and no more than occasional decision making or changes in the work setting" addresses some, but not all, components of Plaintiff's ability to maintain concentration, persistence, or pace. *See id.* On June 25, 2015, Dr. Staton found Plaintiff had adequate attention and concentration; adequate memory; adequate ability to relate to others; good ability to complete simple, routine tasks; and adequate ability to complete complex tasks. Tr. at 263.

From January 2016 to February 2017, Sojka noted Plaintiff had trouble concentrating, very low energy, and low motivation; and he was socially withdrawn. Tr. at 297-378. On February 25, 2016, Dr. Ritz noted Plaintiff reported he had low energy, trouble sleeping through the night, and sleeping too much during the day. Tr. at 290. He observed Plaintiff did not know the correct date or the full address of the examiner's office and was able to recall one of three words after a few minutes but could not accurately repeat a nine word sentence. Tr. at 291–92. He opined Plaintiff might be able to function in a more unskilled type work setting. *Id.* On March 9, 2016, Sojka noted Plaintiff had trouble concentrating, very low energy and low motivation. Tr. at 294–95. On February 25, 2017, Sojka found Plaintiff had poor attention and concentration and adequate memory and he was moderately limited in his abilities to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, ask simple questions or request assistance, and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. at 377–78. Plaintiff reported he had low energy and motivation, excessive sleep, he was socially withdrawn and had difficulty getting out of bed and starting his day. Tr. at 50, 290, 328, 368. The foregoing evidence suggests possible impairment in Plaintiff's abilities to work at an

appropriate and consistent pace, complete tasks in a timely manner, ignore or avoid distractions while working, and work close to or with others.

The ALJ found Plaintiff had severe impairments that included moderate difficulties in concentrating, persisting or maintaining pace, and he explained these impairments could be addressed by a work environment that was "comprised of brief/incidental contact with the general public and no more than occasional decision making or changes in the work setting." Tr. at 18. Although the ALJ found Plaintiff's symptoms were not as limiting as he alleged citing to treatment notes from Dr. Stanton and a consultative evaluation from Dr. Ritz, *see* Tr. at 18–20, he did not identify which symptoms he discredited. *Id.* The ALJ noted Dr. Stanton's opinion that "claimant has good abilities to complete basic activities of daily living and complete simple, routine tasks . . . and adequate abilities to relate to others and complete complex tasks" and Sojka's opinion Plaintiff had moderate to marked limitations in understanding and memory, sustaining concentration and persistence, and social interaction. Tr. at 20. The ALJ gave significant weight to the state agency psychological consultants, which included Dr. Ritz's impressions. Tr. at 21.

The ALJ credited evidence that suggested possible impairment in Plaintiff's abilities to work at an appropriate and consistent pace, complete tasks in a timely manner, ignore or avoid distractions while working, and

work close to or with others. However, the ALJ's explanation of the RFC assessment is bereft of restrictions intended to address those potentially-impaired abilities. The ability to perform tasks with "brief/incidental contact with the general public and no more than occasional decision making or changes in the work setting" differs from the ability to "stay on task," complete tasks in a timely manner, and work with distractions. *See Mascio*, 780 F.3d at 638. The ALJ's decision lacks any reason for declining to include additional restrictions that pertain to these abilities, and the court cannot find that such a conclusion is supported by substantial evidence in light of the ALJ's failure to reconcile evidence to the contrary. *See id.*

The ALJ's RFC assessment fails to comply with the provisions set forth in SSR 96-8p and the Fourth Circuit's direction in *Mascio*. Consequently, the court finds that substantial evidence does not support the RFC assessment. "[B]ecause the ALJ here gave no explanation, a remand is in order." *Mascio*, 780 F.3d at 638.

### 2. Additional Allegations of Error

Plaintiff argues the ALJ erred in (a) failing to attribute significant weight to the opinion of his treating therapist and (b) failing to credit his testimony regarding his limitations with concentration, persistence, and pace. [ECF No. 14 at 9–12]. He contends the ALJ erred in finding Sojka's opinion was inconsistent with her treatment notes and Dr. Stanton's and Dr.

Ritz's opinions, and that his testimony concerning severe concentration problems was not entirely consistent with the medical evidence. *Id.* at 10–12.

In light of the foregoing recommendations, the undersigned declines to address Plaintiff's additional allegations of error. On remand, the ALJ should resolve all conflicting evidence that pertains to Plaintiff's ability to perform work-related functions; explain which symptoms he chose to believe and which he chose to discredit; and "build an accurate and logical bridge from the evidence to his conclusion." *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015).

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned reverses and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

*Shiva V. Hodges*

December 28, 2018                    Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge